# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-526

**PIGEON LAND COMPANY, INC.**

**VERSUS**

**SHELL OIL COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 134538
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Sharon Darville Wilson, Judges.

**REVERSED AND REMANDED.**

**Brent M. Maggio**
**Allen & Gooch**
**301 N. Columbia Street, 2nd Floor**
**Covington, LA   70433**
**(504) 836-5260**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **LLOG Exploration Co., L.L.C.**

**John Hatch Hughes**
**Allen & Gooch**
**2000 Kaliste Saloom Suite 400**
**Lafayette, LA   70598**
**(337) 291-1290**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **LLOG Exploration Co., L.L.C.**

**Douglas C. Longman, Jr.**
**Jones Walker**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA   70501**
**(337) 593-7600**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **LLOG Exploration Co., L.L.C.**

**J. Michael Fussell, Jr.**
**Ryan P. McAlister**
**Ottinger Hebert, L.L.C.**
**Post Office Drawer 52606**
**Lafayette, LA   70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Castex Energy, Inc.**
     **Castex Energy, 1995, L.P.**
     **Castex Energy, 1996, L.P.**

**Allen Anthony McElroy  Jr.**
**McElroy & Duffy**
**Post Office Box 208**
**Berwick, LA   70342-0208**
**(985) 384-2157**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Pigeon Land Company, Inc.**

**Kevin E. Huddell**
**Jones, Swanson, Huddell**
**601 Poydras Street, Suite 2655**
**New Orleans, LA 70130**
**(504) 523-2500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Pigeon Land Company, Inc.**

**Jonathan Robert Cook**
**Wall & Bullington**
**540 Elmwood Park Boulevard**
**Harahan, LA 70123**
**(504) 736-0347**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Taylor Energy Co., L.L.C.**

**Brittney Esie**
**701 Poydras Street, Suite 400**
**New Orleans, LA 70139**
**(504) 523-0400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Apache Exploration**

**PERRET, Judge.**

In this oilfield legacy case, LLOG Exploration Company, L.L.C. ("LLOG"), appeals a trial court judgment that granted an exception of no right of action filed by third-party defendants, Castex Energy 1995, L.P. ("Castex 1995") and Castex Energy 1996, L.P. ("Castex 1996"), (collectively, "the Defendants"). For the following reasons, the trial court's judgment is reversed, and the matter is remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

According to the petition filed on July 22, 2019, Pigeon Land Company, Inc. ("Pigeon") is the owner of property located in the Bayou Pigeon Field in Iberia Parish that has been "contaminated and/or damaged by the oil and gas activities conducted or controlled by one or more of the defendants."[1] Pigeon named the following defendants as joint and solidary tortfeasors: Shell Oil Company ("Shell"); Marathon Oil Company ("Marathon"); Taylor Energy Company, L.L.C. ("Taylor"); LLOG; Gulfport Energy Corporation ("Gulfport"), named individually and as successor in interest to WRT Energy Corporation ("WRT"); Castex Energy, Inc. ("Castex"); and Apache Corporation ("Apache"). In the petition, Pigeon alleges, in pertinent part:

6.

> Defendants have conducted, directed and participated in various oil and gas exploration and production activities as operators and/or working interest owners and/or joint venturers in Bayou Pigeon Field

---

[1]On January 29, 2020, a first supplemental and amending petition for damages was filed adding the following additional plaintiffs who also own land in the Bayou Pigeon Field that was allegedly contaminated and/or damaged by the oil and gas activities: Thomas Charles Forgey; Charlie Ann Forgey Eues; Heidi Briehn Hatch; Heather Briehn Ortis; Clay Phillip Briehn; Lionel Charles Landry; Charley F. Driskill, individually and as independent administrator of the Succession of Floris Fay Forgey Driskill; Gretchen Driskill Bliss; Paula Driskill Willis; and Mary Wiseman Dalton Geoffroy.

and on Plaintiff's [Pigeon's] property. Defendants' activities include the operation or construction of various oil and gas facilities, including but not limited to dredging of canals, drilling of wells, placement and maintenance of drilling and production structures, removal of various drilling or production facilities, pits, sumps, pipelines, flowlines, tank batteries, wellheads, and measuring facilities.

Pigeon's petition sought remediation and other damages based on "causes of action in tort and separate causes of action for breach of contract under the applicable leases and assignments thereof, the Civil Code, and for breach of implied obligations under the Civil Code[.]"

All of the defendants settled with Pigeon by 2022. Thereafter, several of the defendants filed cross-claims and/or third-party demands against one another for indemnity to recover their litigation costs and the amounts of their settlements with Pigeon. Pertinent to this case, on June 22, 2022, LLOG filed a cross-claim against defendant Castex and a third-party demand against the Defendants for indemnity and contribution.

In response to LLOG's cross-claim and third-party demand, Castex and the Defendants filed an exception of no right of action on February 28, 2023. In that exception, Castex and the Defendants allege that "there is no privity of contract between LLOG, on the one hand, and Castex, CE95 [Castex 1995] and CE96 [Castex 1996] on the other" and that "this matter should be dismissed as to Castex, CE95 and CE96."

On March 16, 2023, LLOG filed an opposition to the exception of no right of action and attached the following as exhibits: (1) the Petition for Damages; (2) the First Supplemental and Amending Petition for Damages; (3) the 1994 Assignment, Bill of Sale and Conveyance between LLOG and WRT; (4) the Secretary of State's Amended Application for Certificate of Authority changing the corporate name of

2

WRT to Gulfport; (5) the 1998 Assignment, Bill of Sale and Conveyance between Gulfport and Castex 1996; (6) the 2002 Purchase and Sale Agreement among the Defendants and Apache; and (7) the 2002 Assignment, Bill of Sale and Conveyance from Castex and the Defendants to Apache.

Following a hearing on March 28, 2023, the trial court granted Castex's and the Defendants' exception of no right of action. As a result of the ruling, the Defendants were dismissed from the suit entirely and all of LLOG's claims against Castex were dismissed, with prejudice. However, because Castex still had a pending cross-claim against Apache, it was not dismissed from the suit.

On April 4, 2023, the trial court rendered a signed judgment and, because Castex was not entirely dismissed from the lawsuit, LLOG filed a supervisory writ with this court on April 21, 2023. On July 5, 2023, this court granted the writ, reversed the trial court's ruling, and stated as follows:

> **<u>WRIT GRANTED AND MADE PEREMPTORY</u>**. We find the trial court erred in granting Castex Energy, Inc.'s peremptory exception of no right of action. We find that Castex Energy, Inc. has failed to carry its burden of showing that LLOG Exploration Company, L.C.C., lacked a legal interest in its claims for (1) contribution as a solidary obligor, (2) indemnity as a third-party beneficiary, (3) implied delictual indemnity as a person free from fault, and (4) unjust enrichment as a person having paid a settlement award to the benefit of another. Accordingly, we reverse and set aside the trial court's ruling and enter judgment denying Castex Energy, Inc.'s exception of no right of action.

Because the April 4, 2023 judgment was final as to the Defendants, LLOG filed this appeal, asserting the following assignments of error:

1. The District Court erred in granting the Exception of No Right of Action filed by Castex Energy 1995, L.P. and Castex Energy 1996, L.P. because they failed to carry their burden of showing that LLOG lacked a legal interest in its claim for contribution and indemnity because these parties were solidarily liable to the Pigeon Land plaintiffs and LLOG paid a settlement to the plaintiffs that encompassed the virile share of these Castex entities.

3

2.   The District Court erred in granting the Exception of No Right of Action filed by Castex Energy 1995, L.P. and Castex Energy 1996, L.P. because they failed to carry their burden of showing that LLOG lacked a legal interest in its claim for implied delictual and implied contractual indemnity because LLOG was "free from active fault" and was merely passively at fault for the active fault of the Castex entities which resulted in LLOG paying a settlement with the plaintiffs for the active fault of the Castex entities.

3.   The District Court erred in granting the Exception of No Right of Action filed by Castex Energy 1995, L.P. and Castex Energy 1996, L.P. because they failed to carry their burden of showing that LLOG was not a third party beneficiary under the contracts executed by Castex Energy, Inc. and its limited partners, Castex Energy 1995 L.P. and Castex Energy 1996 L.P.

4.   The District Court erred in granting the Exception of No Right of Action filed by Castex Energy 1995, L.P. and Castex Energy 1996, L.P. because they failed to carry their burden of showing that LLOG does not have a legal interest in its claim that the Castex entities were liable to LLOG, as the Castex entities were limited partners in a partnership-in-commendam with Castex Energy, Inc. thereby obligating all three Castex entities to fulfill the lease obligations that they assumed, including the obligation to indemnify LLOG for its damages.

5.   The District Court erred in granting the Exception of No Right of Action filed by Castex Energy 1995, L.P. and Castex Energy 1996, L.P. because they failed to carry their burden of showing that LLOG is not entitled to indemnity from the Castex entities under the theory of unjust enrichment.

**STANDARD OF REVIEW**

The standard of review of the trial court's granting of the exception of no right of action is de novo. *Leone v. Ware*, 17-638 (La.App. 3 Cir. 5/2/18), 246 So.3d 833. When reviewing a trial court's ruling on an exception of no right of action, an appellate court "should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-

4

2275, 10-2279, 10-2289, p. 7 (La. 10/25/11), 79 So.3d 246, 256. As further stated in *Falcon v. Town of Berwick*, 03-1861, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1222, 1224, (internal citations omitted):

> The exception does not raise the question of the plaintiff's ability to prevail on the merits nor the question of whether the defendant may have a valid defense. Evidence supporting or controverting an objection of no right of action is admissible. The party raising a peremptory exception bears the burden of proof.

When an exception of no right of action is raised in response to a petition that asserts multiple causes of action, the exception should be denied if the plaintiff shows a legal interest in any claim. *Parker v. Paladin Contractors, LLC*, 20-492 (La.App. 4 Cir. 3/3/21), 314 So.3d 1128. "Additionally, the court begins its analysis on an exception of no right of action 'with an examination of the pleadings.'" *Leone*, 246 So.3d at 835 (quoting *Howard v. Adm'rs of Tulane Educ. Fund*, 07-2224, pp. 17–18 (La. 7/1/08), 986 So.2d 47, 60). "If doubt exists about the appropriateness of an objection of no right of action, it is to be resolved in favor of the plaintiff." *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 18-1768, p. 7 (La. 5/8/19), 283 So.3d 472, 477.

## DISCUSSION

In its first assignment of error, LLOG argues that the trial court erred in granting the exception of no right of action filed by the Defendants because the Defendants failed to carry their burden of showing that LLOG lacked a legal interest in its claim for contribution and indemnity because these parties were solidarily liable to the Pigeon Land plaintiffs and LLOG paid a settlement to the plaintiffs that encompassed the virile share of these Castex entities. In response, the Defendants argue that LLOG is not entitled to contribution because the Defendants "never operated any of the wells at issue in the underlying litigation nor conducted

operations on the property at issue" and that LLOG "was never the lessor and has even stipulated that it is not asserting any claims against [the Defendants] as the landowner."

As consideration of the exception of no right of action begins with an examination of the pleadings, a review of LLOG's June 22, 2022 cross-claim and third-party demand against Castex and the Defendants is necessary and it states, in pertinent part (emphasis in original) (refences to exhibits omitted):

4.

LLOG seeks damages for the strict liability, absolute liability, fault, tort, breach of contract and unjust enrichment arising from the ownership, operation, use, leases, and/or sale of wells, equipment, facilities, etc., by Castex, Castex 1995, Castex 1996, WRT Energy Corporation, Gulfport Energy Corporation, and Apache Corporation for the sued upon properties owned by Pigeon Land and the Individual Plaintiffs. Further, LLOG seeks a declaratory judgment that Castex, Castex 1995, and Castex 1996 owe defense, indemnity, contribution, and reimbursement to LLOG for all of LLOG's damages, including amounts owed to and/or paid to any other party to this litigation, including Pigeon Land and Individual Plaintiffs, through settlement or otherwise; for all of LLOG's attorney fees, expert fees, litigation expenses, costs and interest incurred in this litigation; and, for the defense of claims asserted by Taylor, Marathon, Shell, and any other party against LLOG in this lawsuit or any other lawsuit.

. . . .

12.

In the Cross Claim filed by Castex against Apache Corporation, Castex alleged and admitted that Castex operated oil, gas and mineral exploration and production activities on the Subject Property.

13.

As a result of the ownership, leasehold interests, acts and omissions of Castex, Castex 1995 and Castex 1996, Pigeon Land and Individual Plaintiffs filed suit against Castex.

6

14.

On or about November 11, 1994, LLOG Exploration Company and WRT Energy Corporation executed an Assignment, Bill of Sale and Conveyance agreement (hereinafter referred to as the "1994 LLOG-WRT Assignment") whereby LLOG assigned and sold all of its ownership, leases, rights, interests and obligations regarding the subject properties to WRT Energy Corporation. In return, WRT assumed all of LLOG's liabilities and obligations involving the subject properties, including but not limited to the plugging and abandoning of all wells and facilities, the payment and performance of all liabilities and obligations arising under local, state and federal law applicable to hazardous materials and waste, and the assumption of all leases regarding the subject properties. Additionally, WRT assumed LLOG's obligations arising under a) the Taylor Energy Company-LLOG Exploration Company Assignment of Interest dated October 2, 1989, b) the Marathon Oil Company-LLOG Exploration Company Assignment and Bill of Sale dated March 1, 1991 effective January 1, 1991, and c) other assignments. Further, WRT agreed to indemnify, defend and hold LLOG harmless from and against any all losses, claims, suits, controversies, liabilities, and expenses arising directly or indirectly out of WRT's ownership and use of the subject properties, without regard to whether such arise from an incident or condition occurring prior to or after the Effective Date of the Agreement. This Agreement states, **"All of the provisions hereof shall insure to the benefit or, and be binding upon, the parties hereto and their respective heirs, successors, and assigns."** As such, this afore-mentioned provision is binding upon all of the assigns of LLOG, WRT, Gulfport, Castex, Castex 1995/Castex 1996, and Apache. Further, This Agreement was recorded in the Iberia Parish clerk of court records.

15.

On April 23, 1998, WRT Energy Corporation changed its name to Gulfport Energy Corporation.

16.

On November 20, 1998, Gulfport Energy Corporation and Castex Energy 1996 L.P. entered into an Assignment, Bill of Sale and Conveyance agreement (hereinafter referred to as the "1998 Gulfport-Castex Assignment") whereby Gulfport (as the successor to WRT) sold and assigned its ownership and leasehold interests in the subject properties (that it had acquired from LLOG) to Castex Energy 1996. This sale included the leases and wells on the properties. This Agreement was recorded in the Iberia Parish Clerk of Court records.

7

## 17.

In Castex's capacity as the general partner for Castex 1996; Castex executed the 1998 Gulfport-Castex Assignment, on behalf of Castex 1996, as a "general partner[.]"

## 18.

Pursuant to this 1998 Gulfport-Castex Assignment agreement, Castex and Castex 1996 agreed to: 1) assume obligations arising under and with respect to the subject property; 2) be bound by all documents and instruments recorded in the parishes of Iberia, LaFourche, Terrebonne and Vermilion; 3) assume full responsibility for complying with Environmental Law, for the presence of any Adverse Environmental Condition, the duty to remediate pollution, contamination and/or hazardous materials; 4) assume full responsibility for the plugging and abandoning of any wells and restoration of the subject properties; and 5) agreed to defend and indemnify Gulfport for any claims, demands and/or lawsuits resulting arising out of the above obligations whether or not attributable to the Assignor Gulfport's acts or omissions prior to, during or after the period of Assignor Gulfport's ownership of the subject properties. Further, This Agreement was recorded in the Iberia Parish clerk of court records.

## 19.

Pursuant to this 1998 Gulfport-Castex Assignment, Castex and Castex 1996 agreed that its terms and obligations run with the land and leases and shall be binding and insure to the benefit of Assignor (Gulfport) and Assignee (Castex and Castex 1996) and their respective successors and assigns. As such, this afore-mentioned provision is binding upon all of the assigns of LLOG, WRT, Gulfport, Castex, Castex 1995/Castex 1996, and Apache. Attached to and made a part of this Assignment were Bayou Pigeon Field leases, including those involving Lessee, LLOG.

## 20.

Given the terms of the above referenced Assignments, Castex and Castex 1996 assumed the obligations previously owed by WRT and Gulfport to LLOG, thereby obligating Castex and Castex 1996 to defend and indemnify LLOG for the claims and demands asserted in this lawsuit.

## 21.

On December 16, 2002, Apache Corporation (hereinafter referred to as "Apache") entered into a Purchase and Sale Agreement

with Castex Energy 1995, L.P. and Castex Energy, 1996, L.P. (hereinafter referred to as the "2002 Castex-Apache PSA[."])

22.

The 2002 Castex-Apache PSA was executed by John R. Stoika, as President of Castex Energy, Inc. in its capacities as the general partners of Castex Energy 1995, L.P. and of Castex Energy, 1996, L.P.

23.

Pursuant to the 2002 Castex-Apache PSA, Castex Energy 1995, L.P. and Castex Energy 1996, L.P. sold their ownership and leasehold interests (including oil and gas leases) in the subject properties to Apache. In return, Apache assumed all obligations and liabilities of Castex 1995 and Castex 1996 arising out of or with regard to the ownership or operation of the subject properties regardless of whether arising out of operations which occurred prior to or after the effective date of this agreement referred to as "Assumed Obligations". "Assumed Obligations" included but were not limited to the following: 1) all liabilities and obligations of Castex 1995 and Castex 1996 with respect to claims of third persons attributable to the subject property; 2) all losses and obligations arising from Material Environmental Conditions arising with respect to the subject properties; 3) the plugging and abandonment liabilities; and 4) all liabilities associated with the subject properties. Further, Apache agreed to indemnify, defend and hold harmless every member of the Castex 1995 and Castex 1996 group. In this agreement, Apache agreed that the PSA shall be binding upon and insure to the benefits of the parties and their respective successors and assigns.

24.

According to the terms of all of the above-referenced Assignments, the Castex entities (Castex, Castex 1995 and Castex 1996) acquired the assets (the subject properties) of LLOG, WRT and Gulfport; and, those Castex entities expressly and/or impliedly assumed the obligations and liabilities of its predecessors (LLOG, WRT and Gulfport) with respect to the subject properties.

25.

Castex Energy, Inc. is the "general partner" for both Castex Energy 1995 L.P. and Castex Energy 1996 L.P. In its capacity as "general partner" for Castex 1995 and Castex 1996, Castex Energy, Inc. executed contracts acquiring and selling ownership and leasehold interests in the sued upon properties. Therefore, Castex Energy, Inc. is liable, in solido, with Castex Energy 1995 and Castex 1996 for all damages caused by these three Castex entities; and, Castex Energy, Inc.

is responsible for all contractual duties owed by Castex 1995 and Castex 1996.

26.

Throughout the course of defending the above-captioned lawsuit, LLOG has incurred substantial legal fees, litigation expenses, expert fees, costs and expenses in defending itself, and, it has recently entered into a settlement agreement with Pigeon Land and Individual Plaintiffs whereby LLOG paid a monetary settlement.

27.

Of recent, demands for defense and indemnity have been made by Taylor Energy Company, LLC; Shell Oil Company; and Marathon Oil Company against LLOG.

28.

As a result of the acts and omissions of Castex Energy, Inc., Castex Energy 1995, L.P., and Castex Energy 1996, L.P. performed on the Subject Property, the damages allegedly caused by them to the Subject Property, and the terms of the afore-mentioned agreements; Castex Energy, Inc., Castex Energy 1995, L.P., and Castex Energy 1996, L.P. are obligated to defend, reimburse, and indemnify LLOG for LLOG's damages, losses, and obligations relating to the Subject Property, including LLOG's attorney fees, litigation expenses, expert fees, court costs, expenses, and interest in defending itself; the monetary settlement with Pigeon Land and Individual Plaintiffs; and defense of the claims asserted by Taylor Energy Company, LLC, Marathon Oil Company, Shell Oil Company, and any other party against LLOG regardless of whether that defense and indemnity claim is asserted in this litigation or a separate lawsuit.

. . . .

37.

As stated above, the Castex entities (Castex Energy, Inc., Castex Energy 1995, L.P., and Castex Energy 1996, L.P) have breached its contractual and tort obligations owed to LLOG as the Castex entities' active negligence and fault caused damages to the properties of Pigeon Land and the Individual Plaintiffs; and, the Castex entities have failed to defend and indemnify LLOG.

After reviewing the third-party demand, we find that LLOG sufficiently pled

factual allegations that the acts and omissions of the Defendants caused damage to

10

the landowners of Bayou Pigeon Field, the plaintiffs that LLOG settled with. Accepting these factual allegations as true for the purpose of a no right of action, the next issue for this court to consider is whether LLOG has a legal interest in its claims for contribution and indemnity against the Defendants.

In opposition to the exception of no right of action, LLOG attached exhibits to support its allegations that the Defendants ownership, leasehold interests, acts and omissions led to Pigeon's lawsuit. In the November 11, 1994 Assignment, Bill of Sale and Conveyance between LLOG and WRT ("1994 LLOG-WRT Agreement"), LLOG assigned and sold its leases, wells, and obligations regarding the mineral lease to WRT. In return, WRT expressly agreed to:

> [I]ndemnify, defend and hold harmless [LLOG], its officers, directors, agents, representatives and employees from and against any and all losses, claims, suits, controversies, liabilities and expenses without regard to whether such arise from an incident or condition occurring prior to, or after, the [e]ffective [d]ate.

This agreement also provided:

> Successors and Assigns All of the provisions hereof shall inure to the benefit of, and be binding upon, the parties hereto [LLOG and WRT] and their respective heirs, successors, and assigns.

The 1994 LLOG-WRT Agreement was executed on March 8, 1995, but was effective from November 1, 1994. The instrument was filed in the conveyance records of Iberia Parish on March 13, 1995.

On April 23, 1998, WRT changed its name to Gulfport, which was filed and recorded. Thereafter, on November 20, 1998, Gulfport and Castex 1996 entered into an Assignment, Bill of Sale, and Conveyance Agreement ("1998 Gulfport-Castex 1996 Agreement") whereby Gulfport sold and assigned its ownership and leasehold interests in the subject property to Castex 1996. It is worth noting that Castex's President, John R. Stoika, executed this contract on behalf of Castex 1996. When

11

Castex 1996 executed the 1998 Gulfport-Castex 1996 Agreement, it agreed to the following:

> Assignee [Castex 1996] hereby assumes full responsibility for, and agrees to indemnify, hold harmless and defend the Assignor [Gulfport] and its officers, directors, employees, agents and representatives from and against any losses, liabilities, claims, fines, expenses, investigative, response and other costs (including attorneys' fees and court costs) and causes of action asserted by any party, entity or governmental agency, caused by or arising out of:
>
> (a) the duty to comply with or the violation of any Environmental Law (or any permit or approval issued thereunder) or any notification or licensing requirements relating to the Assets;
>
> (b) the presence of any Adverse Environmental Condition in or among the Assets or the Environment;
>
> (c) the duty to remediate surface and subsurface pollution, contamination and/or Hazardous Materials caused by spills, pits, ponds, lagoons, or otherwise; and
>
> (d) the plugging and abandoning of any Wells and the restoration of the surface or subsurface which may be required pursuant to the terms of any applicable Lease, deed instrument, agreement, or Incidental Rights relating to the Assets[.]

This agreement was recorded in the conveyance records of Iberia Parish.

On December 16, 2002, Apache entered into a Purchase and Sale Agreement with the Defendants and Castex. This Purchase and Sale Agreement was executed by John R. Stoika, as President of Castex, in its capacities as the general partner of the Defendants.

On August 14, 2003, the Defendants and Castex signed an Assignment, Bill of Sale and Conveyance with Apache with the effective date being December 1, 2002. Again, Castex's President, John R. Stoika, signed on behalf of Castex and the Defendants. The Defendants and Castex also signed an Assignment with Apache on April 30, 2004, with an effective date of December 1, 2002, stating that "it was the intent of the parties to said Assignment, Bill of Sale and Conveyance [signed on

12

August 14, 2003] that CASTEX was to assign, sell and convey all of CASTEX's interests in the leases, wells, lands, and units . . . within the Bayou Pigeon Field" to Apache. The Assignment further stated that "[t]his Assignment and all rights, reservations and covenants in connection herewith shall be considered covenants running with the lands and shall inure to and be binding upon the parties hereto, their heirs, personal representatives, successors and assigns."

In the July 22, 2019 petition, Pigeon alleges that all of the defendants were joint and solidary obligors and that they have "an obligation to restore said property to its original condition to the extent reasonably practicable under the provisions of La.R.S. 31:22 (Mineral Code article 22). Plaintiff has suffered damages and is entitled to all remedies allowed under the Civil Code and Mineral Code."

In its cross-claim and third-party demand, LLOG asserts that all three Castex entities sold and assigned their interests in Pigeon's property to Apache and that this act confirms that the Castex entities (Castex and the Defendants) owned the leases. Thus, LLOG alleges that it has a right of action for contribution from Castex and the Defendants for payment of a solidary obligation owed by LLOG and the three Castex entities. After reviewing the following Civil Code and Mineral Code articles, we find merit to LLOG's argument that its allegations in the third-party demand against the Defendants establish a right of action for contribution.

Louisiana Civil Code Article 1794 provides that "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." Louisiana Civil Code Article 1796 provides that "[s]olidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." However, "[s]olidarity may also

13

arise by operation of law . . . without the consent of the parties." La.Civ.Code. art. 1796 comment (c).

Louisiana Civil Code Article 1804 provides:

Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.

A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.

Louisiana Civil Code Article 1805 provides:

A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.

Louisiana Revised Statutes 31:128 provides:

To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations.

Louisiana Revised Statutes 31:129 provides:

An assignor or sublessor is not relieved of his obligations or liabilities under a mineral lease unless the lessor has discharged him expressly and in writing.

In *Rainbow Gun Club, Inc. v. Denbury Resources, Inc.*, 17-997 (La.App. 3 Cir. 5/23/18), 247 So.3d 844, this court held that La.R.S. 31:128 and La.R.S. 31:129 create a solidary bond between a mineral lessee and all successive assignees and sublessees. Although LLOG stipulated that it was not a landowner of the property,

it did not stipulate that the Defendants were not owners of the leases on the plaintiff's property.

Based on these legal precepts and the facts as stated in the third-party demand, we find that LLOG possesses a legal interest in its claim for contribution against the Defendants. As such, we find that the trial court erred by granting the Defendants' exception of no right of action. Because we find that LLOG has a legal interest in a claim for contribution, the exception of no right of action should be denied as to the additional causes of action against the Defendants. *See Parker*, 314 So.3d 1128. Accordingly, we pretermit discussion of the remaining assignments of error.

### DECREE

For the reasons stated above, we reverse and set aside the trial court's judgment that granted an exception of no right of action filed by the third-party defendants, Castex Energy 1995, L.P. and Castex Energy 1996, L.P. Costs of this appeal are assessed to appellees, Castex Energy 1995, L.P. and Castex Energy 1996, L.P.

**REVERSED AND REMANDED.**