Dear Mr. Bordelon:
You have requested an opinion of the Attorney General in your capacity as legal counsel to the Housing Authority of the City of Marksville (Authority). You specifically ask whether public funds of the Authority can be used to pay attorney's fees and expenses on behalf of two staff members who filed suit against a member of the Marksville City Council (Council) and her liability carrier for damages allegedly resulting from defamatory statements made by the defendant. The facts giving rise to your request can be briefly summarized as follows.
On July 17, 1997, the Authority and the two staff members filed suit against the defendants alleging damages resulting from various defamatory statements made by the defendant, which were subsequently published. The defendant filed exceptions of lack of procedural capacity and no cause of action. The exceptions were heard by the Twelfth Judicial Court (Court) on August 22, 1997. The Court subsequently denied defendant's exception of lack of procedural capacity.
In her peremptory exception of no cause of action, the defendant contended that the Authority had no cause of action to sue because of its status as a public body. On August 22, 1997, the Court issued written reasons wherein it identified the issue as follows:
 . . . The question presented to the Court is whether or not on the face of the petition, IS the Marksville Housing Authority legally entitled to recover damages, with the Court accepting all well plead allegations of fact as true. The question therefore arises, who is the action being prosecuted on behalf of? Is it the Authority? Is it for the five individual commissioners?
In sustaining the defendant's exception of no cause of action, the Court held, in pertinent part, the following:
 The Marksville Housing Authority is a political body created by statute. Its purpose is to regulate and administer the affairs of public housing. The Authority consists of five commissioners. These commissioners in and of themselves constitute the Authority and have the powers of the Authority as provided by law. Can the "Authority" be defamed? If the "Authority" recovered damages, who would receive the financial windfall? The present commissioners? The past commissioners? The future commissioners?
 Accepting the well plead allegations of facts of the petition to be true, any defamatory statements would necessarily cause damage to the commissioners who were serving at the time and who had made and/or implemented the rules and regulations which were being complained of by the defendant, and which prompted the alleged defamatory statements. The individual commissioners would have a valid cause of action for damages based on the alleged defamation. The Marksville Housing Authority, as a public and political body created by statute, in this Court's opinion, cannot sue for defamation, just as our law provides that political subdivisions cannot be sued for defamation.
Subsequently, on October 6, 1997, a motion and order was signed by the Court dismissing with prejudice the Authority's claim against the defendant. The Authority decided not to appeal its dismissal and, by resolution dated September 11, 1997, terminated its contract with the attorney retained to initiate the litigation. The Authority's two staff members remain as plaintiffs in the litigation. This brings us to the issue at hand, to wit: Can the Authority continue to pay the fees and expenses incidental to this litigation on behalf of the two staff members?
As previously noted, the Authority did not appeal its dismissal from the suit. Accordingly, our opinion is premised on the conclusions of law reached by the Court, as reflected in its written reasons for judgment.
The laws governing the Authority are found at R.S. 40:381, et seq., referred to as the "Louisiana Housing Authorities Law". Section 384 (16) defines "Local housing authority", in pertinent part, as follows:
 . . . A public body, corporate and politic, previously established, or to be established, by a municipality . . . pursuant to the authority provided in this chapter, exercising necessary and essential governmental functions for the purposes stated in this Chapter in matters of statewide concern, although its operations are local in nature. It is a political subdivision of this state,
independent from the municipality . . . which established or establishes it or which may appoint some or all of its commissioners. (Emphasis added.)
The statutorily designated purpose(s) for which the Authority is created are generally to facilitate the development, redevelopment, rehabilitation and preservation of safe livable housing that is affordable to persons of low and moderate income. R.S 40:383. The primary source of funding to accomplish these purposes is derived from the federal government through the Office of Housing and Urban Development. While the Authority receives no State funds, the funds received from the federal government are nevertheless public in nature.
In addition to being a political subdivision of the State, the First Circuit Court of Appeal, in the case of the Department of State CivilService v. Housing Authority of East Baton Rouge and the HousingAuthority of Lake Charles, 673 So.2d 726 (La.App. 1st Cir. 1996), held local housing authorities are State agencies or, alternatively, instrumentalities of the State, for purposes of paying the administrative costs of maintaining the State Civil Service Department. See also Mullins v. State, 387 So.2d 1151 (La. 1980). As such, the local housing authority was held liable for the fees assessed by the State Department of Civil Service for administrative costs associated with maintaining the Civil Service System.
We note that Louisiana law expressly provides for the indemnification of State officers and employees from financial loss, including court costs and monetary damages, for acts arising out of the discharge of duties within the scope of their employment, and in the absence of an intentionally wrongful act or gross negligence. See R.S. 13:5108.1
and 5108.2.
Further, R.S. 13:5108.3 provides for the reimbursement of criminal defense attorney's fees incurred by any official, officer or employee of the State, but only in the event the defendant is acquitted or the proceedings are dismissed, and payment is authorized by legislative appropriation. This indemnification applies to State officers and employees, which, by definition in Section 5108.2 (A)(2), specifically excludes "an "official', "officer', or "employee' of a political subdivision or local authority . . .
We have found no provision of law similar to R.S. 13:5108.1, et seq., which affords indemnification to officers and employees of political subdivisions, and have so noted in previous opinions. Attorney General Opinion Nos. 97-248, 96-210, 94-369, 90-3, 83-475 and 80-105A.
However, we have historically recognized and opined that a political subdivision may, in its discretion, pay and/or reimburse its employees and officials for reasonable attorney's fees and expenses incidental to criminal or civil investigations and/or proceedings. This payment or reimbursement is generally conditioned upon (1) the successful defense of the criminal or civil proceeding, (2) a finding that the defendant's alleged actions arose out of the performance of official duties and (3) a determination that the fees and costs were necessary and reasonable. Attorney General Opinion Nos. 96-210, 96-162, 95-252, 94-369, 93-376, 89-401, 85-415, 83-475 and 80-105A.
A review of the laws and jurisprudence of this State reveals no authority for the use of public funds to pay the attorney's fees and expenses at issue. Again, the final judgment of the Twelfth Judicial District Court opines that any damages caused by the alleged defamatory statements would necessarily be to the commissioners (or, in this case, the two staff members). Thus, the individual staff members would have a valid cause of action for damages based on the alleged defamation. While there would be no prohibition against the continued representation of the two staff members in their individual capacities, we find no legal authority for the Housing Authority of the City of Marksville to pay the legal fees and expenses relating to said representation. Any such future payments by the Authority would be subject to challenge under Article VII, Section 14 (A) of the Louisiana Constitution of 1974.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/sfj